***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. An employee-employer relationship existed between the named employee and named employer at the times in question.
3. The carrier liable on the risk is correctly named above.
4. There is no issue as to misjoinder or nonjoinder.
5. The employee's average weekly wage is $687.54 per week as stipulated at the hearing.
6. The employee sustained an injury on or about May 26, 2005.
7. The injury arose out of and in the course of employment and is compensable.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 40 years old and had worked as a law enforcement officer and Chief of Detectives for Defendant-Employer from May 1988 through 1993 and from 1997 through December 2, 2008. His work as a law enforcement officer involved responding to a wide variety of emergency situations.
2. One such emergency occurred on the morning of May 26, 2005, when Plaintiff sustained an admittedly compensable injury while subduing a suspect who was resisting arrest related to a breaking and entering. Plaintiff testified that the suspect weighed approximately 300 pounds and was approximately six feet, five inches in height. Plaintiff is five feet, seven inches. In the course of the struggle, Plaintiff grabbed the suspect under his arms and the two tumbled to the ground. Plaintiff testified that during the altercation, his right knee struck the ground on several occasions and shortly after, he noticed pain in his right knee and also his lower back. *Page 3 
3. On May 26, 2005, Plaintiff presented to Caldwell Industrial Medicine and Outpatient Care and was restricted to sedentary work. The medical notes for that visit confirm Plaintiff's testimony that his right knee hit the ground, he strained his back, and as a result, Plaintiff experienced pain in both areas.
4. Plaintiff was referred to Dr. James Stanislaw, an orthopedic surgeon concentrating in sports medicine and hand and joint replacement, who had previously treated Plaintiff for a right knee injury. Although Plaintiff testified that he presented to Dr. Stanislaw for his right knee sometime in 2001, the medical records were unavailable and therefore were not introduced into evidence. Prior to Plaintiff's injury on May 26, 2005, his most recent appointment with Dr. Stanislaw was on May 9, 2005. During that visit, Plaintiff was diagnosed with a small tear in his medial meniscus for which conservative treatment was planned.
5. On June 1, 2005, Plaintiff again presented to Dr. Stanislaw regarding his right knee pain from the May 26, 2005 incident. Dr. Stanislaw opined that Plaintiff had probably injured the cartilage inside his knee and referred Plaintiff for an MRI. When Plaintiff next presented to Dr. Stanislaw on June 22, 2005, he informed Plaintiff that the MRI revealed "small linear signal at the posterior horn that could have been consistent with a small tear." Dr. Stanislaw did not recommend surgical intervention but advised Plaintiff to consider a triamcinolone lidocaine injection in the joint of his right knee.
6. Plaintiff did not present again to Dr. Stanislaw for treatment of his knee until March 4, 2008, almost three years later. On that date, he reported a gradual increase in medial-side right knee pain and swelling. Dr. Stanislaw recommended an MRI which revealed evidence of articular cartilage loss with evidence of a complex medial meniscus tear. Dr. Stanislaw testified at his deposition that "[c]omplex is a very specific term and it usually means a *Page 4 
combination of delaminating or degenerative tearing in a variety of directions." Those findings led Dr. Stanislaw to perform arthroscopic surgeries on March 19, 2008 and December 26, 2008. Despite surgical intervention, Plaintiff's symptoms persisted into 2009.
7. Dr. Stanislaw opined that, as a result of cumulative trauma, Plaintiff experienced symptoms consistent with degenerative changes and the loss of shock absorbing and articular cartilage. Specifically, Dr. Stanislaw opined,
 Predominantly the cumulative trauma appeared to take its effect at the medial joint, and that's where the findings were on his initial arthroscopies. However, there were degenerative changes now at the anterior joint which were not previously related to his symptoms or to any one isolated event.
8. When asked his opinion as to whether the accident of May 26, 2005 was a contributing cause to Plaintiff's knee problems, Dr. Stanislaw testified,
 I think that his injuries and his occupation could be theoretically contributory to his current state of affairs. I also feel strongly, after reviewing the progress of his knee over separate arthroscopies, that the tears were of a degenerative nature and that they have progressed in a degenerative pattern most consistent with osteoarthritis.
9. Dr. Stanislaw opined that it was conceivable Plaintiff's injury and previous injuries contributed to his osteoarthritis, but did not cause it. However, he opined that there was a less than 50 percent likelihood that the injury at work contributed to Plaintiff's arthritis because the original pattern tears were degenerative in nature and degenerative changes developed in other parts of the knee that were not specifically involved in the original tears. Dr. Stanislaw summarized Plaintiff's condition by opining that Plaintiff's knee is a degenerative knee and the tears have been degenerative in nature. Plaintiff has osteoarthritis as opposed to an isolated injury or even cumulative injuries that have resulted in post-traumatic arthritis. *Page 5 
10. Dr. Stanislaw treated Plaintiff's right knee condition since approximately 2001 and performed several arthroscopic surgeries on Plaintiff's right knee. Taken in its entirety, Dr. Stanislaw's testimony and medical records, fail to link Plaintiff's right knee problems and multiple surgeries to the May 26, 2005 work incident. Therefore, the Full Commission finds that Plaintiff has failed to establish a causal connection between the May 26, 2005 work injury and Plaintiff's continuing right knee problem. Accordingly, the Full Commission does not address any compensable consequences to Plaintiff's left knee that may have occurred as a result of his right knee condition.
11. For Plaintiff's complaints of back pain, Dr. Stanislaw referred him to Dr. Maxy, an orthopaedic surgeon with a specialty in spine surgery. On July 21, 2005, Plaintiff presented to Dr. Ralph Maxy, who opined that Plaintiff had an L4 vertebral pars fracture. Plaintiff continued to experience persistent back pain and x-rays taken on January 26, 2006 revealed abnormal motion and instability between the L4 and L5 vertebrae. Dr. Maxy opined that this was caused by the pars fracture and recommended conservative treatment.
12. When conservative treatment failed to produce relief for Plaintiff, on September 29, 2006, Dr. Maxy performed an L4-5 spine fusion surgery with a bone graft.
13. Plaintiff returned to work in January 2006 and was transferred from his position as Chief of Detectives to Chief Jailor at the Caldwell County Detention Center. Plaintiff testified that he had difficulty performing this job as some of the physical requirements exceeded his restrictions assigned as a result of his work injury. Plaintiff testified that he actually experienced more physical confrontations at the jail than he had as a detective.
14. On December 2, 2008, Dr. Maxy placed a permanent 50-pound lifting restriction on Plaintiff's activities and advised Plaintiff to avoid repetitive bending and twisting restrictions. *Page 6 
At this time, Dr. Maxy opined that Plaintiff was unable to return to law enforcement work on a permanent basis because of his back condition. Effective January 1, 2009, Plaintiff was approved for Local Governmental Employee's Retirement System benefits. After being approved for disability retirement, Plaintiff engaged in a reasonable job search but was unsuccessful in locating employment within his restrictions.
15. Dr. Maxy opined, and the Full Commission finds, that Plaintiff's work injury on May 26, 2005 was a substantial causative factor in Plaintiff's back condition, which necessitated the L4-5 fusion surgery on September 29, 2006.
16. The Full Commission further finds that as a result of Plaintiff's injury by accident to his spine on May 26, 2005, he has been unable to earn the same or greater wages since December 2, 2008 with Defendant-Employer or in any other employment.
17. With regard to the necessity of future medical treatment for Plaintiff's back, Dr. Maxy opined there is a substantial likelihood Plaintiff will need future treatment at the L3-4 level.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 26, 2005, Plaintiff sustained an injury by accident to his lumbar spine arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of Plaintiff's compensable injury by accident to his spine on May 26, 2005, since December 2, 2008, Plaintiff has been unable to earn the same *Page 7 
or greater wages as he was earning in the same or any other employment. As a result, Plaintiff is entitled to receive temporary total disability compensation at the rate of $458.38 per week commencing December 2, 2008, and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. §§ 97-2(9), 97-29.
3. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable May 26, 2005 injury by accident to his lumbar spine, including but not limited to the L4-5 spine fusion surgery, and other treatment recommended by Dr. Maxy for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief, or tend to lessen Plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Pursuant to N.C. Gen. Stat. § 97-25.1, there is a substantial risk of the necessity of future medical compensation for Plaintiff's lumbar spine.
5. Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980). In the present case, there is insufficient competent medical evidence to establish, beyond mere speculation, that the May 26, 2005 injury by accident was the proximate cause of Plaintiff's right knee condition. Dr. Stanislaw's testimony fails to establish a causal connection between the May 26, 2005 work injury and Plaintiff's continuing right knee problems and surgeries.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD *Page 8 
1. Subject to an attorney's fee hereinafter approved, Defendants shall pay to Plaintiff temporary total disability compensation at a rate of $458.38 per week commencing December 2, 2008 and continuing until further Order of the Industrial Commission. Any compensation that has accrued shall be paid to Plaintiff in a lump sum, subject to the attorney's fee.
2. Defendants shall pay all past and future medical expenses incurred or to be incurred as a result of Plaintiff's compensable injury by accident to his lumbar spine, including but not limited to the L4-5 spine fusion surgery, and other treatment recommended by Dr. Maxy for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or lessen Plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the ongoing compensation due Plaintiff under Paragraph One of this Award is approved for Plaintiff's counsel and shall be paid by defendants as follows: twenty-five percent of any compensation which has accrued shall be paid directly to Plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to Plaintiff's counsel.
4. Under the law, Plaintiff's claim for his right knee condition and surgeries must be and is hereby denied.
5. Defendants shall pay the costs.
This the ___ day of February 2010.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING: *Page 9 
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER
 *Page 1